**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

JASMINE D. LEWIS,

        Petitioner,    :    Case No. 2:20-cv-3461

  - vs -        District Judge Michael H. Watson
        Magistrate Judge Michael R. Merz

SHELBIE SMITH, Warden,
 Dayton Correctional Institution,

        :
        Respondent.

---

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Magistrate Judge for a recommendation on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 4, as expanded at ECF Nos. 15 and 18), the Respondent's Amended Return of Writ (ECF No. 19), and Petitioner's Amended Traverse (ECF No. 16).

**Litigation History**

On June 18, 2017, the Logan County, Ohio, grand jury indicted Petitioner in connection with the November 24, 2016, shooting death of Jeffrey Brentlinger in his home. Lewis was charged with one count each of complicity to commit aggravated burglary in violation of Ohio Revised Code §§ 2911.11(A)(1) and 2923.03; aggravated robbery in violation of Ohio Revised Code §§ 2911.01(A)(1) and 2923.03; and murder in violation of Ohio Revised Code §§ 2903.02 and 2923.03

1

(Ohio Revised Code § 2923.03 is the complicity statute.) Each count carried a firearm specification (Indictment, State Court Record, ECF No. 4, Ex. 1).

With the assistance of counsel, Lewis reached a plea agreement with the State under which she would plead guilty to complicity to murder. The terms of the agreement unique to Lewis are handwritten onto a six-page form presumably prepared and in general use by the Logan County Prosecutor.[1] *Id.* at Ex. 6, PageID 38-43. After conducting the required plea colloquy, the trial court judge accepted the guilty plea, found Lewis guilty as charged of complicity to commit murder, and dismissed the remaining charges and the firearm specification (Judgment Entry, State Court Record, ECF No. 4, Ex. 17). After receiving a presentence investigation report, the trial court sentenced Lewis to the mandatory life sentence applicable to her offense with parole eligibility after fifteen years. *Id.* at Ex. 8.

Lewis appealed, but the conviction was affirmed. *State v. Lewis*, 2018-Ohio-1911 (Ohio App. 3d Dist. May 14, 2018). Lewis did not appeal to the Supreme Court of Ohio. On December 3, 2018, represented by her appellate counsel, Lewis filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 4, Ex. 18). The trial court denied relief. *Id.* at Ex. 23.

With the assistance of new counsel who continue to represent her in this proceeding, Lewis again appealed, but the trial court was affirmed. *State v. Lewis,* 2019-Ohio-3031 (Ohio App. 3d Dist. Jul. 29, 2019), appellate jurisdiction declined, 2019-Ohio-5289 (2019)). Almost a year later, but within the statute of limitations, Lewis filed her Petition for Writ of Habeas Corpus in this Court, raising the following single ground for relief:

> **Ground One:** When an attorney acknowledges giving fundamentally [sic] incorrect legal advice that forms the basis of a

---

[1] The Magistrate Judge infers its general use from the fact that it contains provisions for use in sex offender cases, not applicable in this case.

2

>
> client's decision to plead guilty to murder, the ineffective assistance of counsel has been established under the Sixth and Fourteenth Amendments to the United States Constitution.

(Petition, ECF No. 1, PageID 11).

**Facts of the Crime**

To support a finding of guilt, the prosecutor stated the following as the relevant underlying facts:

> On November 24, 2016, MarQuevous Watkins, Zachariah Huddleston, Alexus Walton, Tatiana Freeman, and the defendant, Jasmine Lewis were in a conspiracy to rob Jeffrey Brentlinger at his house located at 6498 Township Road 127, Zanesfield, Logan County, Ohio.
>
> Specifically, the defendant had met the victim Brentlinger on a website called MeetMe, and set up a sexual encounter to include a possible threesome that included codefendant Tatiana Freeman; however, the plan was to rob Jeff Brentlinger instead of engaging in the sexual activity.
>
> To facilitate the foregoing, the five codefendants drove from Lima to the victim's home with codefendant Alexus Walton being the driver of her maroon 2006 Chevy Malibu. Prior to departing Lima, they stopped at a local Walmart where the defendant and codefendants Alexus Walton and Tatiana Freeman entered and shoplifted a ski mask and a roll of duct tape that were to be used in the robbery of Brentlinger.
>
> Upon arriving at Brentlinger's residence, Jasmine Lewis and Tatiana Freeman were dropped off. They entered the residence and ended up going into the victim's bedroom. Once there, they engaged in the pretense of preparing to engage in the threesome, but in reality were merely stalling and waiting for codefendant's Watkins and Huddleston to enter and rob Brentlinger.
>
> After a period of time, Watkins and Huddleston did just that, barging into the residence, each possessing a drawn handgun and confront Brentlinger and demanding his money. Unfortunately, during this

3

> robbery, Brentlinger was shot by codefendant Huddleston in the thigh and was later fatally shot by codefendant Watkins in the chest. It was after this fatal shot that the four codefendants fled the residence into the waiting car driven by defendant Walton and fled the scene.

(Transcript of Plea Hearing, State Court Record, ECF No. 4-2, PageID 279-280).  Lewis admitted to the truth of those facts. *Id.* at PageID 281.  She does not now dispute their accuracy.

## Analysis

In her sole Ground for Relief, Petitioner asserts she received ineffective assistance of trial counsel when her trial attorney, Joseph Benavidez, advised her that she could receive a sentence as low as life imprisonment with parole eligibility after seven years.

On direct appeal, Lewis raised as her sole assignment of error that she had received ineffective assistance of trial counsel.  The Assignment was quite general: "[Lewis's] trial counsel rendered ineffective assistance of counsel, in violation of her constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16, of the Ohio Constitution."  *Lewis*, 2018-Ohio-1911 ¶ 4.  The Third District understood her particular claim to be "that her counsel was ineffective for not informing her that she could not get a sentence lower than life in prison with parole eligibility after fifteen years." *Id.* at ¶ 6.  In support, the appellate court says she cited to an argument made by her attorney at sentencing for the possibility of parole before fifteen years.  *Id.*

In her brief on appeal, represented by the same counsel who represent her here, Lewis alleged "the record is clear that Ms. Lewis' counsel promised her that she could receive a sentence of less than 15 years to life."  (Return of Writ, ECF No. 18, PageID 427).  However, instead of

4

quoting any portion of the record which is said to show such a clear promise, counsel quoted the defense attorney's argument at sentencing for some sentence less than fifteen to life "**We would ask for a lesser amount if the Court can see fit so that she may possibly entertain the possibility of parole at an earlier date**." *Id.* (Emphasis in original).

In addition to deficient performance, Lewis had to prove prejudice. *Strickland v. Washington,* 466 U.S. 668 (1984). Attempting to do so, her counsel alleged "[h]ad Ms. Lewis known that the only sentence she could have received was 15 years to life, she would not have pled guilty." *Id.* at PageID 429. Again there is no record reference to any supporting facts.

The Third District elided the absence of record proof of either a promise by Benavidez or reliance by Lewis. Assuming that any advice that a sentence less than fifteen to life would have been deficient performance, it concluded there was no proof of prejudice:

> Lewis alleges that counsel's representation that the sentence could be lower was what caused her to agree to plead guilty. There is no question that anyone convicted of violating R.C. 2903.02 "shall be imprisoned for an indefinite term of fifteen years to life." R.C. 2929.02(B)(1). Thus, counsel's alleged statement that Lewis should be eligible for parole in fewer than fifteen years would be contrary to statute. However, this does not mean that counsel's alleged error was prejudicial.

*Lewis*, 2018-Ohio-1911, ¶ 6. The court then quotes from the trial judge's statement in the plea colloquy advising Lewis that a fifteen to life sentence was mandatory and that that was the sentence he would impose.

> Although counsel may have made an improper request at sentencing, Lewis had already been informed by the trial court that the sentence was going to be a life term with parole eligibility after fifteen years. Additionally, the written change of plea agreement, which was signed by Jasmine in open court, stated that no attorney had promised or suggested that she would receive a lighter sentence because of the plea. Doc. 55 at 2-3. This all occurred before Lewis entered her plea of guilty. Thus, the record does not support a conclusion that a misstatement of counsel at sentencing would have

5

> affected the outcome of the case. Lewis was fully informed by the trial court of what the mandatory sentence was. She was also told by the trial court that it would be imposing that sentence. After the trial court informed her of the sentence, she agreed to change her plea. No prejudice resulted from counsel's statement. Thus, this court does not find that counsel was ineffective.

*Id.* at ¶ 7.

Because there was no record evidence sufficient to prove ineffective assistance of trial counsel, Lewis reiterated that claim in her Petition for Post-Conviction Relief. Then she added her argument based on evidence *dehors* the record:

> Moreover, Ms. Lewis' counsel promised her that she could receive a sentence of less than 15 years to life. (Exhibit A, Affidavit of Jasmine D. Lewis; Exhibit B, Affidavit of Nikitta Peterson; Exhibit C, Affidavit of Joseph A. Benavidez)
>
> 24. The Court of Appeals, in denying Ms. Lewis's claim of ineffective counsel, found that "the record does not support a conclusion that a misstatement of counsel at sentencing would have affected the outcome of the case." *State v. Lewis,* 3rd Dist. Logan No. 8-17-43, 2018-Ohio-l 911, ¶ 7. Such evidence now exists *de hors* [sic] the record.
>
> 25. As indicated in the attached affidavits from Ms. Lewis, her mother, Nikitta Peterson, and trial counsel, Joseph A. Benevidez,[sic] (Exhibit A, Affidavit of Jasmine D. Lewis; Exhibit B, Affidavit of Nikitta Peterson; Exhibit C, Affidavit of Joseph A. Benavidez), there is no question that Ms. Lewis would not have pled guilty, but for trial counsel's misinterpretation of the law. Trial counsel, to his credit, admits that he told Ms. Lewis she would be eligible for parole after serving half of a 15-year sentence. Ms. Lewis's mother strongly urged her to plead guilty based on this misunderstanding, and Ms. Lewis simply would not have done so had she not been told she would get out of prison after 7 years if she exhibited good behavior.

(Petition, State Court Record, ECF No. 4, PageID 74). The trial court dismissed the Petition and Lewis appealed, asserting the trial court had erred in applying *res judicata* to bar her claim because it was based on evidence *dehors* the record. *State v. Lewis*, 2019-Ohio-3031, ¶ 10. In deciding

6

that question, the Third District applied *State v. Calhoun*, 86 Ohio St. 3d 279 (1999) which establishes criteria by which a trial court may assess the credibility of post-conviction affidavits without holding an evidentiary hearing. The appellate court found that Lewis had raised on direct appeal "the exact same arguments and issues that now she raises in her petition." *Id.* at ¶ 20. Examining its prior decision on direct appeal, it concluded Lewis was able to and did raise her ineffective assistance of trial counsel claim on the basis of the appellate record and did not need additional evidence *dehors* the record for the deficient performance prong of *Strickland*. *Id.* at ¶ 22.

The Third District took note of the Benavidez Affidavit, but concluded that it added nothing on the prejudice prong of *Strickland*. *Id.* at ¶ 24. Applying the credibility factors from *Calhoun*, the court found the post-conviction affidavits from Lewis and her mother did not outweigh other evidence of record, particularly Lewis' statements during the plea colloquy and recorded in the presentence investigation report:

> [*P25] While the affidavits from Lewis and Peterson allege that Lewis would not have pled guilty if her attorney provided her with correct advice as to her parole eligibility, the statements in their affidavits do not change our prior analysis for several reasons. First, under the *Calhoun* factors, these affidavits do not provide credible statements that establish prejudice. The judge who presided over Lewis's change of plea hearing and sentencing was the judge who ruled on Lewis's petition and was, therefore, aware of the circumstances of this case. *Calhoun, supra*, at 285. In his ruling on the petition, the judge noted that he had "in three separate ways advised that the sentence was fifteen years to life and it was a mandatory sentence that * * * [had to be] imposed." Doc. 105. Thus, the judge did not find that the affidavits indicated that Lewis had been prejudiced by her defense counsel's deficient performance. Doc. 105.
>
> [*P26] Further, Peterson is Lewis's mother and is, therefore, a close relative of the petitioner. Doc. 95. *Calhoun, supra*, at 285. See *State v. Knowles*, 8th Dist. Cuyahoga No. 95239, 2011-Ohio-1685, ¶ 23

7

(holding that the affidavit of the petitioner's mother was self-serving and lacked credibility). Similarly, Lewis, as an affiant, is most certainly interested in the outcome of this petition. *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1st Dist. 1994) (holding that "evidence out of the record in the form of petitioner's own self-serving affidavit alleging a constitutional deprivation will not compel a hearing."). These two affidavits also contain similar language. *Calhoun, supra*, at 285. Lewis's affidavit also contradicts her statements before the trial court in the Crim.R. 11 colloquy. Thus, her statements, as an affiant, contradict the evidence in the record. *Id*.

[*P27] Second, the trial court correctly instructed her as to the terms of her parole eligibility before she pled guilty in the Crim.R. 11 colloquy. *Lewis, supra*, at ¶ 7. In response, Lewis affirmed, on the record, that she understood that she would not be eligible for parole until she had served fifteen years of her prison term. Change of Plea Hearing Tr. 9. Thus, Lewis's supporting affidavit has "the effect of recanting prior statements [that she] made on the record" before she entered her plea. *Calhoun, supra*, at 289. See *Taylor v. Ross*, 150 Ohio St. 448, 83 N.E.2d 222 (1948), third paragraph of the syllabus (holding that "[r]ecanting testimony ordinarily is unreliable and should be subjected to the closest scrutiny."). This Court has previously held that "a 'record reflecting compliance with Crim.R. 11 has greater probative value' than a petitioner's self-serving affidavit." *Brehm, supra,* 1997 Ohio App. LEXIS 3125, [WL] at *1, quoting *Moore, supra,* at 753, citing *Kapper, supra,* at 38. In order to accept Lewis's affidavit, we must "believe that [her] statements at [the] plea hearing, set forth in their entirety in the record, were false." *Brehm*, 1997 Ohio App. LEXIS 3125, [WL] at *1.

[*P28] Third, beyond the Crim.R. 11 colloquy, there is additional evidence in the record that does not support the affidavits of Peterson and Lewis. The PSI clearly indicates that Lewis was aware that she would have to serve at least fifteen years in prison. PSI. During an interview, she told the investigator that she knew that her sentence was going to be fifteen years to life in prison and that she believed she would be released on parole after she had served fifteen years. PSI. While she said that she did not want this sentence, she still indicated that she understood her sentence as communicated by the trial court at her change of plea hearing. PSI.

[*P29] In the end, Lewis still cannot substantiate her claim that she would not have pled guilty if her attorney had correctly informed her of her parole eligibility because she correctly related the terms

> of her sentence to the PSI investigator. PSI. See *State v. Davis*, 11th Dist. Portage No. 2003-P-0077, 2004-Ohio-6684, ¶ 33 (holding that an affiant's claims were not credible where they contradicted statements made for the presentence investigation.). While her attorney's statements at the sentencing hearing indicate that he left the change of plea hearing with an incorrect understanding of the terms of his client's sentence, Lewis's statements to the PSI investigator indicate that she left the change of plea hearing with a correct understanding of the terms of her sentence. Since her affidavit contradicts her own statements as recorded in the PSI, her affidavit is undermined—not corroborated—by the evidence in the original record. *Calhoun, supra*, at 288.
>
> [*P30] Similarly, even assuming that Peterson's affidavit accurately states that she had pressured Lewis to plead guilty on the basis of a misunderstanding of the law, Lewis's understanding of her sentence is the determinative issue in this case. The record indicates that Lewis was aware of the terms of her sentence regardless of whether her mother was operating under a misapprehension of the law. While Peterson may have pressured her daughter to plead guilty, Lewis still stated during her change of plea hearing that her decision was voluntary; that no one threatened her to enter this plea; and that no one promised her anything to enter this plea. Change of Plea Tr. 5, 7. She also signed a change of plea petition that stated she was pleading guilty voluntarily; that no one had promised her a more lenient sentence for so pleading; and that she was not threatened or coerced in this process. Doc. 55.

*Lewis*, 2019-Ohio-3031.

**Exhaustion of State Court Remedies**

Respondent, noting that Lewis never sought Supreme Court of Ohio review on direct appeal, argues that the remedy of delayed direct appeal remains available to her (Return of Writ, ECF No. 19, PageID 476-77). Nevertheless, Respondent urges the Court to dismiss the Petition for lack of exhaustion, rather than staying it until the Supreme Court of Ohio could rule on such a motion. *Id.*

Petitioner responds that her failure to take an appeal to the Supreme Court of Ohio on direct

9

review did not constitute a failure to exhaust because she filed a petition for post-conviction relief and pursued that claim through both levels of appeal (Traverse, ECF No. 16, PageID 397).

Petitioner cites no authority for the proposition that filing a petition for post-conviction relief without taking a direct appeal or a delayed direct appeal satisfies the exhaustion requirement. At the same time Respondent does not mention that a dismissal without prejudice at this point in time would bar Lewis from returning to federal court because the statute of limitations has run while the instant Petition has been pending. *Duncan v. Walker,* 533 U.S. 167 (2001).

Failure to exhaust does not deprive this Court of jurisdiction and will be excused when the federal constitutional claim is plainly meritless and it would be a waste of time and judicial resources to require exhaustion. *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987). It is extremely unlikely, given how seldom the Supreme Court of Ohio exercises appellate jurisdiction over felony appeals, even when timely invoked, that it would grant a delayed appeal in this case.

The Court should excuse the lack of exhaustion here and decide this case on the merits.

**Procedural Default**

Alternatively**,** Respondent asserts Lewis's Petition is barred by her procedural default in the state courts, specifically that her claim in post-conviction was barred by Ohio's criminal *res judicata* doctrine enunciated in *State v. Perry*, 10 Ohio St. 2d 175 (1967)(Return of Writ, ECF No. 19, PageID 483).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state

> procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786

11

F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Petitioner concedes the existence of Ohio's criminal *res judicata* doctrine (Traverse, ECF No. 16, PageID 401-02).  Without doubt, that doctrine is firmly established; *Perry* dates from 1962.  It is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d

155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Petitioner also concedes that the *res judicata* doctrine was enforced against her (Traverse, ECF No. 16, PageID 402). Nevertheless, she argues her claim is not procedurally defaulted because "the Third District erred in finding Ms. Lewis' claim barred by *res judicata*, and her claim is not procedurally defaulted." *Id.*

The question of whether the Ohio doctrine of *res judicata* applies here is a question of state law on which this federal habeas court is bound by the determination of the state courts. *Bradshaw v. Richey*, 546 U.S. 74 (2005). The argument that *res judicata* did not apply was presented to the Third District in the post-conviction appeal and they thoroughly canvassed the relevant factors from *Calhoun* before deciding that the evidence *dehors* the record presented in post-conviction (i.e. the Affidavits of Lewis, Peterson, and Benavidez) were not sufficient evidence to overcome the *res judicata* bar. Obviously, not just any additional evidence could overcome that bar, because then the *res judicata* doctrine would be gutted. The requirement that affidavits satisfy the *Calhoun* standard is therefore an adequate state rule because it promoted the interest in finality of criminal judgments which is recognized as an appropriate state interest.

However, the Third District's decision that *res judicata* prevented presentation of Lewis' ineffective assistance of trial counsel claim in post-conviction does not prevent this Court from reaching the merits of that claim. The Sixth Circuit has held:

> There are two variants of *res judicata* under Ohio law for collateral attacks on convictions. *Lundgren v. Mitchell,* 440 F.3d 754, 765 n.2 (6th Cir. 2006). The first variant is when a petitioner could have, but failed, to bring a claim on direct review. *Id.* The second variant occurs in state court when a claim was actually brought and litigated on direct appeal. *Id.* This second variant of res judicata cannot form the basis of federal procedural default, however, because the

13

>petitioner did not fail to comply with a state procedural rule-namely that claims must be raised on direct appeal if possible. *See id.*

*Durr v. Mitchell*, 487 F.3d 423 (6th Cir. 2007). *Durr* also holds that the federal courts will review habeas claims on the merits when Ohio courts hold on collateral review that claims are barred by *res judicata* because decided on direct appeal, in that the petitioner has not procedurally defaulted. When a state court declines to consider the merits of a claim in post-conviction on the grounds that it has already done so, e.g., by holding the claim barred by *res judicata* because decided on direct appeal, there is no procedural bar to habeas review. *Post v. Bradshaw*, 621 F.3d 406 (6th Cir. 2010), *citing Cone v. Bell,* 556 U.S. 449 (2009).

Petitioner has not demonstrated that the Third District's decision is an incorrect application of *res judicata* doctrine, but under the "second variant" described in *Durr*, the merits of Lewis's claim can be decided by this Court.

**Merits Consideration**

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

>A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328

15

> (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Third District Court of Appeals decided the merits of Lewis's ineffective assistance of trial counsel claim twice, once on direct appeal and once, in the alternative, on post-conviction appeal. In both instances it accepted Lewis's position on deficient performance, to wit, that Attorney Benavidez's request at sentencing for less than fifteen to life showed that he believed, incorrectly, that such a sentence was possible. Respondent does not contest that finding on the deficiency prong.

Instead, the parties' argument focuses on the second prong of *Strickland*, the prejudice prong. Respondent argues the state court's factual decision that Lewis suffered no prejudice is

entitled to deference (Return, ECF No. 19, PageID 488-92).

Petitioner accuses the trial court of applying the wrong standard in determining prejudice, deciding the Lewis would have been convicted at trial had she not pleaded guilty (Traverse, ECF No. 16, PageID 403-04, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) and *Strickland*, 466 U.S. at 687)). However, she then concedes that the Third District "arguably applied the proper standard." *Id.* at PageID 403, citing *Lewis*, 2019-Ohio-3031, ¶ 18. The Magistrate Judge agrees that the Third District did apply the correct standard, and it is the final state court decision which is entitled to deference under 28 U.S.C. § 2254(d)(1).

Lewis argues the Third District misapplied the correct standard because it "inexplicably determined Ms. Lewis did not establish she would not have pled guilty but for the erroneous advice, Lewis, 2019-Ohio-3031, ¶ 23–30 (ECF No. 4, State Court Record, Exhibit 28, PageID #194-98), despite clear evidence to the contrary." However, the "clear evidence to the contrary" to which Lewis adverts is all contained in the affidavits submitted in post-conviction. Consideration of those affidavits was barred procedurally by *res judicata* under *Perry*, so even by Lewis's account, prejudice is only "clear" in light of evidence barred from consideration.

But even if the affidavits were not barred by *res judicata*, they do not present "clear" evidence of prejudice because they do not show Lewis did not understand her sentence would be fifteen to life. In summary, she pleaded guilty in a proceeding in which the consequences of the plea were thoroughly explained to her by the judge well before the sentencing hearing in which Attorney Benavidez misstated the law and indeed before she stated to the presentence investigator her understanding that the sentence would be fifteen to life. A misunderstanding arising from a misstatement of the law at sentencing cannot have made her prior guilty plea unknowing and

17

involuntary.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 12, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.